NOT FOR PUBLICATION

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
                  CAMDEN VICINAGE


ROSCOE BENTON III,          :    CIV. NO. 20-4056(RMB)
                            :
         Petitioner         :
                            :
    v.                      :         OPINION
                            :
DAVID ORTIZ,                :
                            :
         Respondent         :
```

BUMB, District Judge

Petitioner Roscoe Benton III is incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"). On April 13, 2020, he filed a request to vacate his federal sentence and release him from prison, alleging his life is in danger from the spread of COVID-19. (Pet., Dkt. No. 1.) For screening purposes, the Court construed his request as a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Order, Dkt. No. 2.) Respondent filed an Answer and opposition to habeas relief.[1] (Answer, ECF No. 5.)

---

[1] Petitioner contends that the Court should ignore Respondent's Answer because it was filed after the deadline set by the Court. (Letters, Dkt. Nos. 8-9.) The Court granted, *nunc pro tunc*, Respondent's request for a two-day extension of time to file an answer (Order, Dkt. No. 6) and accepts Respondent's Answer as within time.

I.  BACKGROUND

On May 5, 2016, Petitioner was sentenced in the United States District Court, Eastern District of Michigan to a 48-month term of incarceration with 3 years of supervised release for multiple counts of Bankruptcy Fraud, in violation of 18 U.S.C. § 157(3), and Mail Fraud, in violation of 18 U.S.C. § 1341. (Declaration of James Reiser[2] ("Reiser Decl.") Dkt. No. 5-2, Exs. 1 and 2.) If Petitioner receives all good conduct time available, his projected release date is December 14, 2021. (Id.)

In the petition, Petitioner alleged the Bureau of Prisons ("BOP") could not keep inmates safe from the spread of COVID-19. (Pet., Dkt. No. 1.) Fearing death, Petitioner asked the Court to vacate his sentence and release him. (Id.) This Court did not sentence Petitioner and lacks jurisdiction to vacate his sentence. Petitioner can seek compassionate release from his sentencing court, after first seeking relief from the warden of FCI Fort Dix, pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Lacking jurisdiction to vacate Petitioner's sentence, this Court construed Petitioner's submission as seeking release to home confinement under the CARES Act. (Order, Dkt. No. 2.)

---

[2] James Reiser is a Case Management Coordinator at FCI Fort Dix. (Reiser Decl., ¶1, Dkt. No. 5-2.)

The BOP entered Phase 6 of its COVID-19 action plan (the "Action Plan"), governing operations in federal prisons, on April 13, 2020. (Reiser Decl. ¶21(a)). In this phase, all inmates in every BOP institution must be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. (Id.) Only limited group gathering is permitted, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. (Id.) Further, BOP has severely limited the movement of inmates and detainees among its facilities. (Id.)

All staff and inmates were issued an appropriate face covering and strongly encouraged to wear the face covering when in public areas. (Id. ¶21(b)). Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. (Id. ¶21(c)). Asymptomatic inmates with risk of exposure are placed in quarantine. (Id.) Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. (Id.) In addition, all staff are screened for symptoms. (Reiser Decl. ¶21(c), Dkt. No. 5-2). Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. (Id.) Staff members with any symptom can be placed on leave by a medical officer. (Id.)

Contractor access to BOP facilities is restricted to only those performing essential services (*e.g.*, medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. (Reiser Decl., ¶21(d), Dkt. NO. 5-2.) Any contractor who requires access will be screened for symptoms and risk factors. (Id.) Social and legal visits were suspended on March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates. (Id. ¶21(e)). Legal visits are permitted on a case-by-case basis, and attorneys are for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors. (Id.) Updates of BOP's modified operations are available to the public on the BOP website, on a regularly updated resource page.[3] All of the COVID-19 positive inmates are in the minimum security Camp, isolated together in a Unit. (Id. ¶22.) Petitioner is designated a Low security inmate. (Id. ¶23.) He is housed on the Low security compound where no inmate has been confirmed positive for COVID-19. (Reiser Decl. ¶23, Dkt. No. 5-2.) Under the present criteria for release to home confinement under the CARES Act, Petitioner is ineligible because he has a "Low PATTERN Score" and has served only 44% of his sentence. (Id., Exs. 1 and 2.)

---

[3] Available at www.bop.gov/coronavirus/index.jsp. (Reiser Decl., ¶21(f)).

II.   DISCUSSION

    A.   Standard of Law

A federal prisoner may challenge the execution of his or her sentence in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243-44 (3d Cir. 2005); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001). 28 U.S.C. § 2241(c)(3) provides: "The writ of habeas corpus shall not extend to a prisoner unless-- (3) He is in custody in violation of the Constitution or laws or treaties of the United States…."

Liberally construing Petitioner's request for relief, he seeks release to home confinement under the CARES Act. Before the CARES Act was passed, 18 U.S.C. § 3624(c)(2) provided the BOP with the authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2) (effective July 19, 2019). As part of The CARES Act, Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under § 3624(c)(2). See Pub. L. No. 116-36, § 12003(b)(2). Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months.

By memorandum dated March 26, 2020, the Attorney General directed the BOP to "prioritize the use of [its] various statutory

5

authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (Reiser Decl., ¶4.)[4] The Attorney General specifically directed the BOP to consider the totality of the circumstances of each inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors including: the age and vulnerability of the inmate; the security level of the facility holding the inmate; the inmate's conduct while incarcerated; the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"); whether the inmate has a demonstrated an verifiable reentry plan that will prevent recidivism and ensure public safety (including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at their current facility); and the inmate's crime of conviction. (Reiser, Decl. ¶5, Dkt. No. 5-2.)

On April 3, 2020, the Attorney General exercised authority under The CARES Act to further increase home confinement.[5] The Attorney General authorized the Director of the BOP to immediately

---

[4] See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited June 17, 2020).

[5] See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited on June 17, 2020).

maximize transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elton, and other similarly situated Bureau facilities where COVID-19 was materially affecting operations.[6]

In response to the Attorney General's March 26, 2020 Memorandum, the BOP is currently assessing certain factors to ensure that an inmate is suitable for home confinement including, but not limited to, reviewing the inmate's institutional discipline history for the last twelve months; ensuring that the inmate has a verifiable release plan; verifying that the inmate's primary offense is not violent, a sex offense, or terrorism related; and confirming the inmate does not have a current detainer. (Reiser Decl., ¶18, Dkt. No. 5-2.) Although the factors are subject to deviation and subject to revision if the situation changes, the BOP has prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences. (Reiser Decl., ¶19, Dkt. No. 1.)

There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. § 2241. Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000). In the typical case, an inmate's failure to exhaust all stages of the administrative remedy

---

[6] Id.

system prior to the filing of a habeas petition under 28 U.S.C. § 2241 is a proper basis for dismissal. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).

    The administrative remedy procedure for the BOP is set forth at 28 C.F.R. §§ 542.10 to 542.19. The procedure provides formal review of any complaint that relates to any aspect of the inmate's confinement. 28 C.F.R. § 542.10(a). For most complaints, inmates must first attempt to resolve the complaint informally with institution staff. 28 C.F.R. § 542.13(a). If that fails, the inmate may file an administrative remedy request with the warden of the institution, within 20 calendar days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a). If the Warden denies the request, the inmate may file an appeal with the Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the Federal Bureau of Prisons, within 30 calendar days from the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative appeal. Id. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

B.  <u>Analysis</u>

Respondent argues that the petition should be dismissed because Petitioner failed to exhaust administrative remedies. Prior to filing the petition, Petitioner had not filed any administrative remedy request for home confinement. (Declaration of Christina Clark, ¶4 and Ex. 1, Dkt. No. 5-1.) Petitioner has not offered any justification for his failure to exhaust administrative remedies prior to filing the present petition. While the BOP has determined that Petitioner is not eligible for release to home confinement under the CARES Act at this time, Petitioner has not sought review of this decision within the Bureau of Prisons. As stated above, the factors the BOP considers for home confinement eligibility under the CARES Act are subject to deviation and may be revised if circumstances change. Therefore, exhaustion of administrative remedies serves an important purpose.

III. CONCLUSION

For the reasons discussed above, the Court will dismiss the petition without prejudice for failure to exhaust administrative remedies. Petitioner is not precluded from bringing a new petition under § 2241 after exhausting administrative remedies, if he has a proper basis to challenge the BOP's determination under the CARES Act.

9

**Date:   June 18, 2020**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**